DREVET HUNT (Bar No. 240487)
Email: dhunt@cacoastkeeper.org
CALIFORNIA COASTKEEPER ALLIANCE
1100 11th Street, 3rd Floor
Sacramento, California 95814
Telephone: (415) 606-0864

*Attorney for Plaintiffs*
LOS ANGELES WATERKEEPER

JS-6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOS ANGELES WATERKEEPER, a California non-profit corporation<br><br>                    Plaintiff,<br><br>     vs.<br><br>PRIME PLATING AEROSPACE, INC., a Nevada corporation doing business as PRIME PLATING, and SCHMIDT INDUSTRIES, INC., a California corporation doing business as PRIME PLATING,<br><br>                    Defendants. | Case No.: 2:21-cv-08283-FMO-E<br><br>**CONSENT DECREE** |

## CONSENT DECREE

**WHEREAS,** Los Angeles Waterkeeper ("LA Waterkeeper" or "Plaintiff") is a 501(c)(3) non-profit public benefit water advocacy corporation organized under the laws of the State of California, with its main office in Los Angeles, California;

**WHEREAS**, LA Waterkeeper is dedicated to the preservation, protection and defense of the surface, ground, coastal and ocean waters of Los Angeles County from all sources of pollution and degradation;

**WHEREAS**, PRIME PLATING AEROSPACE, INC. and SCHMIDT INDUSTRIES, INC. (collectively "Prime Plating" or "Defendants") own and operate a facility at 11321 Goss Street, Sun Valley, California 91352 ("Facility");

**WHEREAS**, activities conducted at the facility include processing of metal finishing services such as electroplating, anodizing, and producing coatings for industrial companies;

**WHEREAS**, storm water discharges associated with industrial activity at the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board], Water Quality Order 97-03-DWQ, and as amended by Water Quality Orders Nos. 2015-0057-DWQ and 2015-0122-DWQ ("Industrial General Permit" or "Permit"), and the Federal Water Pollution Control Act, 33 U.S.C. § 1251 *et seq.* ("Clean Water Act" or "CWA"), Sections 301(a) and 402, 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS**, the Industrial General Permit requires all permittees, including Defendants, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP") and a storm water monitoring implementation plan ("MIP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and timely updated in the SWPPP, (3) reduce and eliminate

discharges necessary to comply with any and all applicable Water Quality Standards ("WQS"), and (4) implement a monitoring and reporting program designed to assess compliance with the Industrial General Permit for subject industrial activities;

**WHEREAS**, on September 8, 2020, Plaintiff issued a notice of intent to file suit ("60-Day Notice") to Defendants, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Director Los Angeles Regional Water Quality Control Board ("Regional Board"), and the Regional Administrator of EPA Region IX, alleging violations of the Clean Water Act and Industrial General Permit;

**WHEREAS**, on October 19, 2021, LA Waterkeeper filed a complaint against Prime Plating in the Central District of California, Civil Case No. 2:21-cv-08283-FMO-E ("Complaint");

**WHEREAS**, Plaintiff's Complaint alleged violations of the Industrial General Permit and CWA for Defendants' discharges of pollutants into surface waters, including the Los Angeles River ("Receiving Waters");

**WHEREAS,** Defendants denies all allegations in the 60-Day Notice and the Complaint and reserves all rights and defenses with respect to such allegations and claims;

**WHEREAS**, Plaintiff and Defendants (collectively "Settling Parties" or "Parties," individually a "Party") without either adjudication of Plaintiff's claims or any admission by Defendants of any alleged violation or other wrongdoing, believe it is in their mutual interest to enter into a Consent Decree setting forth terms and conditions appropriate to resolving the allegations set forth in the 60-Day Notice Letter and Complaint without further proceedings;

**WHEREAS**, Defendants maintain they are acting in good faith to meet the requirements of all regulations and environmental law, and all actions taken by the

Defendants pursuant to this Consent Decree shall be made in compliance with all applicable federal, state and local rules and regulations.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the CWA, 33 U.S.C. § 1365(a)(1)(A);

2.     The Parties hereby consent to Magistrate Judge jurisdiction in the United States District Court Central District of California;

3.     Venue is appropriate in the Central District Court pursuant to Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1), because the Facility at which the alleged violations are taking place is located within this District;

4.     The Complaint states a claim upon which relief may be granted against Defendants pursuant to Section 505 of the CWA, 33 U.S.C. § 1365;

5.     LA Waterkeeper has standing to bring this action;

6.     The Court shall retain jurisdiction over this action for purposes of interpreting, modifying, or enforcing the terms of this Consent Decree, or as long thereafter as necessary for the Court to resolve any motion to enforce this Consent Decree, but only regarding issues raised within the four (4) year term of this Consent Decree.

I.  **OBJECTIVES**

7.     It is the express purpose of the Setting Parties through this Consent Decree to further the objectives of the Clean Water Act and to resolve all issues alleged by LA Waterkeeper in its 60-Day Notice and Complaint. These objectives include compliance with the provisions of this Consent Decree, compliance with all terms and conditions of the Industrial General Permit, and compliance with all applicable sections of the CWA.

8.      In light of these objectives and as set forth fully below, Defendants agree to comply with the provisions of this Consent Decree, terms and conditions of the General Permit, and all applicable sections of the CWA for subject industrial activities at the Facility.

## II. AGENCY REVIEW AND CONSENT DECREE TERM

### A. AGENCY REVIEW OF CONSENT DECREE

9.      Agency Review. Plaintiff shall submit this Consent Decree to the United States Department of Justice and the EPA (the "Federal Agencies"), within three (3) business days of the final signature of the Parties, for agency review consistent with 40 C.F.R. § 135.5. The agency review period expires forty-five (45) calendar days after receipt by the Federal Agencies, as evidenced by certified return receipts. In the event that the Federal Agencies object to entry of this Consent Decree, the Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies.

10.     Court Notice. Plaintiff shall notify the Court of the receipt date by the Federal Agencies, as required by 40 C.F.R. § 135.5, in order coordinate the Court's calendar with the 45-day review period.

11.     Entry of Consent Decree. Following expiration of the Federal Agencies' 45-day review period, Plaintiff shall submit the Consent Decree to the Court for entry.

### B. EFFECTIVE DATE AND TERM OF CONSENT DECREE

12.     Effective Date. The Effective Date of this Consent Decree shall be the date of entry by the Court.

13.     Term & Termination. This Consent Decree shall terminate four (4) years from the Effective Date unless one of the Settling Parties has invoked Dispute Resolution in accordance with Section IV of this Consent Decree, in which case the Consent Decree will terminate within the earlier of fifteen (15) days of notice by the Settling Parties that invoked Dispute Resolution that the dispute has been fully

resolved or an order of the Court resolving the dispute and terminating the Consent Decree.

III. **COMMITMENTS OF THE SETTLING PARTIES**

    A. STORM WATER POLLUTION CONTROL BEST MANAGEMENT PRACTICES

14.    <u>Current and Additional Best Management Practices</u>: In addition to maintaining the current Best Management Practices ("BMPs") described in the Facility's Storm Water Pollution Plan ("SWPPP"), Defendants shall (1) develop and implement BMPs identified herein, and (2) develop and implement additional BMPs necessary to comply with the provisions of this Consent Decree and the Industrial General Permit, including but not limited to those that achieve BAT and BCT to prevent or reduce contamination in storm water discharges associated with industrial activities, and ensure that industrial storm water discharges do not cause or contribute to an exceedance of any applicable water quality standards in any affected receiving water.

15.    <u>Structural and Non-Structural BMPs for the Facility</u>: Within 120 days of the Effective Date of this Consent Decree, Defendants shall develop and implement the following BMPs at the Facility's drainage areas (as depicted in Exhibit A):

    a. For Drainage Area 1 along the eastern boundary of Defendants' property:

        i. Berm the northeast and southeast property boundary (currently shared with SealMaster) with a concrete masonry unit block wall at least 8 inches high, sealed with asphaltic water barrier membrane spray (or suitable water barrier equivalent), to prevent run on of storm water to Defendants' property;

        ii. Install a berm at least 8 inches high between Drainage Area 1 and the western end of the parking lot bordering Drainage Area 2;

        iii. Prohibit the use of forklifts in Drainage Area 1 and reroute all forklift activity from covered areas through Drainage Area 2;

iv. Install a spiral configured filtration straw waddle (or approved equivalent) suitable for minimizing suspended silts and metals around the SW-1 inlet;

v. Conduct manual sweeping of the entire drainage area twice per week as well as within 24 hours of any forecasted rain event during the wet season (between October 1 and April 30), and once per week during the dry season (between May 1 and September 30);

vi. Pressure wash the entire drainage area twice per month, and capture and divert all water used for washing to the holdings tanks in Drainage Area 2 (described below in paragraph 15.b). Defendants shall sweep the area immediately prior to pressure washing and, during pressure washing activities, Defendants shall install a temporary dike around the SW-1 inlet to prevent non-storm water discharges;

b. For Drainage Area 2 along the western and northern boundaries of Defendants' property;

i. Berm the northwest and southwest and boundary of the property, with a concrete masonry unit block wall at least 8 inches high, sealed with asphaltic water barrier membrane spray (or suitable water barrier equivalent), to direct all storm water up to and including in an 85th percentile storm event to the Facility's existing discharge to the local sanitary sewer system;

ii. Install a berm of sufficient height to contain all storm water up to and including in an 85th percentile storm event across the southwest gate of the property, so designed that access is still permittable to vehicles;

iii. Install storage tanks and necessary pumping equipment to retain all storm water at the Facility up to and including in an 85th percentile storm event, including storm water from Drainage Area 4 that drains into Drainage Area 2, so that it may be discharged to the local sanitary sewer system in compliance with the Facility's permit for discharges to the sanitary sewer system. Such storage tanks shall include, at a minimum, a capacity of 6,000 gallons. To the extent that a revised sanitary sewer discharge permit with an increased discharge volume limit is necessary to comply with the terms of this Consent Decree, Defendants shall apply for a revised sanitary sewer discharge permit (if necessary) and Defendants' discharges to the sanitary sewer system shall be consistent with the requirements of the revised permit;

c. For Drainage Area 3 encompassing the main roof that drains to the southern boundary of Defendants' property:

i. Clean all visibly stained surfaces on the roof and re-paint the roof with an appropriate latex-based UV-resistant paint, sealer (or suitable equivalent) as necessary to eliminate stormwater exposure to pollutants.

16.    Storm Water Monitoring and Sampling from Drainage Area 2: Prior to installation of the Berm surrounding Drainage Area 2 depicted on Exhibit A, Defendant shall collect samples during Qualifying Storm Event(s) from each discrete discharge location from Drainage Area 2, including but not limited to the southern driveway entrance to the Facility (approximate location of SW-2 depicted on Exhibit A) and any other discharge from a subdrainage area within Drainage Area 2 that does not generally flow to the area captured by the location at the southern driveway entrance (such as any discharge occurring at the northern end of the western boundary of the Facility). Once the Berm surrounding Drainage Area 2 is installed,

Defendants shall collect samples as required by Section XI. And Attachment H of the Industrial General Permit.

17.     Storm Water Monitoring and Sampling from Drainage Areas 1 and 3: Beginning with the 2022-2023 Reporting Year, Defendants shall collect samples at each of the three downspouts from the main roof and at all discharge points from the Facility (including but not limited to SW-1 and SW-3), no fewer than four (4) times during the reporting year, and during each Qualified Storm Event (as defined in the Industrial General Permit). To the extent there are fewer than four (4) rain events during the reporting year, Defendants shall collect samples during each rain event that results in a sufficient discharge to collect representative samples. In the event that Defendants adds one or more discharge points anywhere at the Facility during the term of this Consent Decree, the sampling collection and analysis requirements contained in this Consent Decree shall apply to such new discharge point(s).

a.  Beginning with the 2023-2024 Reporting Year, if none of the samples collected during the 2022-2023 Reporting Year at SW-1 and SW-3 show exceedances of the limits identified in Table 1, Defendants may reduce sample collection and analysis to a total of two (2) storm water samples from Qualifying Storm Events during each Reporting Year (July 1 – June 30) consistent with Industrial General Permit section XI.B.2.

b.  Beginning with the 2023-2024 Reporting Year, if none of the samples collected during the 2022-2023 Reporting Year at the downspouts from the main roof show exceedances of the limits identified in Table 1, Defendants may cease collecting samples from those downspouts.

18.     Sampling Parameters: All samples of storm water collected pursuant to this Consent Decree shall be analyzed for, at minimum, the parameters listed in Table 1.

19.     Laboratory and Holding Time. Except for pH samples, delivery of all samples to a California state certified environmental laboratory for analysis within

allowable hold times, pursuant to 40 C.F.R. Part 136. Analysis of pH will be completed onsite using a calibrated portable instrument for pH in accordance with the manufacturer's instructions.

20.     Detection Limit: Defendants shall request that the laboratory use analytical methods adequate to detect the individual contaminants at or below the values specified in the Industrial General Permit and Table 1 below.

21.     Reporting: Defendants shall provide complete laboratory results of all samples collected at the Facility to SMARTS in accordance with the Industrial General Permit, and shall provide copies to LA Waterkeeper within ten (10) days of receiving a written request for the results.

**B.  REDUCTION OF POLLUTANTS IN DISCHARGES**

22.     Table 1 Numeric Limits: Defendants shall develop and implement BMPs, including advanced treatment as necessary, to reduce pollutants in storm water at the Facility to levels below those in Table 1. Beginning October 1, 2022, and for the remainder of the term of this Consent Decree, if storm water samples demonstrate an Exceedance as defined paragraph 23 in a single reporting year, Defendants shall comply with the action plan requirement set forth below.

TABLE 1

| Analytes | Limits | Source of Limit |
|---|---|---|
| Total Suspended Solids (TSS) | 100 mg/L | IGP NAL[1] |
| Oil and Grease | 15 mg/L | IGP NAL |
| pH | 6.5-8.5 su | Basin Plan |
| N+N | 0.68 mg/L | IGP NAL |
| Total Iron (Fe) | 1 mg/L | IGP NAL |
| Total Aluminum (Al) | 0.75 mg/L | IGP NAL |
| Total Nickel (Ni) | 1.02 mg/l | IGP NAL |
| Total Cadmium (Cd) | 0.0031 mg/L | TMDL NEL |
| Total Copper (Cu) | 0.06749 mg/L | TMDL NEL |
| Total Zinc (Zn) | 0.159 mg/L | TMDL NEL |

---

[1] "IGP NAL" refers to the numeric action levels in the Industrial General Permit.

23.     Beginning with the 2022-2023 reporting year, in any reporting year under the term of this Consent Decree an "Exceedance" occurs if (1) the annual average of all storm water analytical results for an analyte exceeds the applicable IGP NAL or Basin Plan limit,[2] set forth in Table 1; (2) any two storm water analytical results for an analyte exceeds the applicable Instantaneous NALs as set forth in Table 2 of the Industrial General Permit; or (3) any two storm water analytical results for an analyte exceeds the applicable TMDL NEL-based limits set forth in Table 1.

24.     <u>Action Plan for Exceedances</u>: If storm water samples required by this Consent Decree demonstrate an Exceedance, Defendants shall prepare and submit to LA Waterkeeper a plan for reducing and/or eliminating the discharge of pollutants ("Action Plan") for the Facility.

25.     If an Action Plan is required following a Reporting Year, it shall be submitted by June 30, at the conclusion of any given Reporting Year that demonstrated an Exceedance.

    a.  Action Plan Requirements. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged causing the Exceedance; (2) an assessment of the source of each contaminant Exceedance; (3) the identification of additional BMPs that will be implemented to achieve compliance with the applicable limits or action levels, as well as the design plans and calculations of these additional BMPs as applicable; and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1 of the upcoming Reporting

---

[2] The term "Basin Plan" refers to the Water Quality Control Plan for the Los Angeles Region Basin, issued by the Los Angeles Regional Water Quality Control Board.

Year. Defendants shall notify LA Waterkeeper in writing when an Action Plan has been implemented.

b.  Specific Action Plan Requirement for Exceedances at SW-1 or SW-3 or DS-1 or DS-2: If Defendants' discharges from SW-1 or SW-3 result in an Exceedance, Defendants' Action Plan pursuant to paragraph 24.a shall include a plan to, at minimum, (i) convert the inlet at SW-1 into a containment sump and pumping storm water collected from SW-1 into the containment area in Drainage Area 2, where such storm water will be collected in tanks and discharged into the sanitary sewer system pursuant to paragraph 16.5.i; and (ii) install a rollover berm across the eastern driveway at SW-3 to contain and divert storm water either to the containment sump at SW-1 or to a pump sump at DS-2 that would similarly pump storm water to the containment area in Drainage Area 2. If Defendants' discharges from DS-1 or DS-2 result in an Exceedance, Defendants' Action Plan pursuant to paragraph 24.a shall include a plan to, at minimum, divert storm water from DS-1 and DS-2 into the containment area in Drainage Area 2 via PVC piping along the southern side of the Facility. The BMPs described in this paragraph shall be implemented no later than October 1 of the following Reporting Year.

c.  Action Plan Review. LA Waterkeeper shall have thirty (30) days upon receipt of Defendants' Action Plan to provide Defendants with comments. Within fourteen (14) days of receiving LA Waterkeeper's proposed revisions to an Action Plan, Defendants shall consider each of LA Waterkeeper's recommended revisions and accept them or justify in writing why any comment is not incorporated. Action Plan(s) developed and implemented pursuant to this Consent Decree are an obligation of this Consent Decree. Any disputes as to the adequacy of an Action Plan

shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section IV below.

d.  Action Plan Payments. Defendants shall pay Four Thousand Dollars ($4,000.00) each time an Action Plan is submitted to LA Waterkeeper. Payments shall be made payable to: "Los Angeles Waterkeeper" and delivered by overnight carrier to Los Angeles Waterkeeper, Attn: Benjamin Harris, 360 E. 2nd St., Suite 250, Los Angeles, CA 90012. Failure to submit a payment as required under this paragraph will constitute a breach of the Consent Decree.

e.  In the event of an expected delay in implementing any BMP(s) identified in an Action Plan that Defendants could not avoid had it exercised due diligence to ensure timely implementation, Defendants shall provide LA Waterkeeper notice of the expected delay and propose a new deadline for implementation of the delayed BMP(s). LA Waterkeeper shall not unreasonably withhold consent to a reasonable new deadline for BMP implementation.

**C. VISUAL OBSERVATIONS**

26.  <u>Storm Water Discharge Observations</u>: During the life of this Consent Decree, Defendants shall conduct visual observations during the Facility's operating hours during every rain event that results in storm water discharges from the Facility.

27.  <u>Visual Observations Records</u>: Defendants shall maintain observation records and photographs to document compliance with paragraph 26 and shall provide LA Waterkeeper with a copy of those records within fourteen (14) days of receipt of a written request from LA Waterkeeper for those records.

28.  <u>Employee Training Program</u>: Within 120 days of the Effective Date, Defendants shall develop and implement an employee training program that meets the following requirements and ensures (1) that there is a sufficient number of employees at the Facility designated to achieve compliance with the Industrial

General Permit and this Consent Decree ("Designated Employees"), and (2) that these Designated Employees are properly trained to perform the activities required by the Industrial General Permit and this Consent Decree ("Training Program"):

    a.  <u>Language</u>. The training and training materials shall be available and offered in the language(s) in which relevant employees are fluent. If necessary, Defendants shall provide a translator or translators at all trainings where such translation is likely to improve staff comprehension of the Training Program and improve compliance with this Consent Decree and the Industrial General Permit.

    b.  Training shall be provided by a Qualified Industrial Storm Water Practitioner ("QISP"), as defined in Section IX.A of the 2015 Permit) familiar with the requirements of this Consent Decree and the Industrial General Permit, and shall be repeated as necessary to ensure that all relevant employees are familiar with the requirements of this Consent Decree, the Industrial General Permit, and the Facility's SWPPP. All relevant new staff shall receive this training before assuming responsibilities for implementing the SWPPP.

    c.  <u>Sampling Training</u>: Defendants shall designate an adequate number of employees or maintain contracts with qualified consultants to collect storm water samples as required by this Consent Decree, including training to ensure samples are properly collected, stored, and submitted to a certified laboratory.

    d.  <u>Visual Observation Training</u>: Defendants shall provide training on how and when to properly conduct visual observations to Designated Employees.

    e.  <u>Employees</u>: All Designated Employees at the Facility shall participate in the Training Program annually. New Designated Employees shall

participate in the Training Program within thirty (30) days of their hiring date.

    f.   The Defendants shall maintain training records to document compliance with this paragraph and shall provide LA Waterkeeper with a copy of these records within fourteen (14) days of receipt of a written request.

    g.   <u>Identification of Storm Water Pollution Prevention Team and Training Program Updates into SWPPP</u>: Within sixty (60) days of the Effective Date of this Consent Decree, Defendants shall update the SWPPP to identify the positions and persons responsible for carrying out storm water management, monitoring, sampling and SWPPP implementation.

    29.   <u>SWPPP and Monitoring Implementation Plan ("MIP") Revisions and Update</u>: Within 30 days of the Effective Date of this Consent Decree, Defendants shall amend the Facility's SWPPP and MIP to incorporate the requirements in this Consent Decree. Defendants agree to submit the updated SWPPP and MIP to LA Waterkeeper upon completion for review and comment.

    a.   <u>Review of SWPPP and/or MIP</u>: LA Waterkeeper shall have thirty (30) days from receipt of the amended SWPPP and/or MIP to propose any changes. Within thirty (30) days of receiving LA Waterkeeper's comments and proposed changes to the SWPPP, Defendants shall consider each of the comments and proposed changes and either accept them or justify in writing why any proposed change is no incorporated;

    b.   Defendants shall revise the SWPPP and MIP if there are any material changes in the Facility's operations, including but not limited to changes in storm water discharge points or BMPs within thirty (30) days of the changes, which will be subject to LA Waterkeeper's review and comment as provided in paragraph 29(a) above.

c.       The Parties agree to work in good faith to resolve any disputes with respect to the SWPPP or MIP, and any remaining disputes will be resolved through timely initiation of the dispute resolution procedures in Section IV below.

### D. COMPLIANCE MONITORING AND REPORTING

30.     Document Provision. During the term of this Consent Decree, Defendants shall notify and submit documents to LA Waterkeeper as follows:

a.       Defendants shall copy LA Waterkeeper on all compliance documents, monitoring and/or sampling data, written communications and/or correspondences, or any documents related to storm water quality for the subject industrial activity areas at the Facility that are submitted to the Regional Board, the State Board, and/or any state or local agency, county or municipality. Alternatively, to the extent that Defendants submit such documents to the Regional Board or State Board via SMARTS, Defendants may satisfy this requirement by providing notice to LA Waterkeeper via email that said documents have been uploaded to SMARTS within seven (7) calendar days of uploading said documents.

b.       Any compliance document, inspection report, written communication and/or correspondence, or any document related to storm water quality at the Facility received by Defendants from the Regional Board, the State Board, and/or any state or local agency, county, municipality shall be sent to LA Waterkeeper within ten (10) business days of receipt by Defendant. Defendants shall mail paper copies or email electronic copies of documents to LA Waterkeeper at the relevant notice address contained below.

31.     Compliance Monitoring. Defendants agree to partially defray costs associated with Plaintiff's monitoring of Defendants' compliance with this Consent

Decree by paying Twenty Thousand Dollars ($20,000.00), which shall be made in installments as set forth in paragraph 34 below.

### E. ENVIRONMENTAL MITIGATION, LITIGATION FEES AND COSTS, STIPULATED PENALTIES, AND INTEREST

32.     Environmental Mitigation Project: To remediate the alleged environmental harms resulting from allegations in the Complaint, Defendants agree to provide Forty Thousand Dollars ($40,000.00) to the Rose Foundation for Communities and the Environment, to be used for supplemental environmental projects relating to the reduction, prevention or mitigation of, or research on, the effects of discharges of pollutants to the Los Angeles River watershed and/or Pacific Ocean waters adjoining Los Angeles. The funds pursuant to this paragraph shall be provided in ten (10) monthly installment payments of Four Thousand Dollars ($4,000.00) each, payable to Rose Foundation for Communities and the Environment and sent via overnight mail to: Rose Foundation, 201 4th St APT 102, Oakland, CA 94607. The first monthly installment payment shall be due January 10, 2023. Defendants shall provide LA Waterkeeper with a copy of each such payment.

33.     LA Waterkeeper's Fees and Costs: Defendants agree to pay a total of Ninety-Four Thousand Dollars ($94,000.00), in installment payments as set forth in paragraph 34 below, to partially reimburse Plaintiff for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating a resolution of this matter.

34.     Payment Schedule for Compliance Monitoring and Partial Reimbursement of Fees and Costs: Defendants shall satisfy the monetary obligations of paragraphs 31 and 33, which total One-Hundred and Fourteen Thousand Dollars ($114,000.00), as follows:

a.     Ten (10) monthly payments of Three Thousand Dollars ($3,000.00), due on the 10th of each month, beginning January 10, 2023; and

b.      Twelve (12) monthly payments of Seven Thousand Dollars ($7,000.00), due on the 10th of each month, beginning November 10, 2023.

Payments pursuant to this paragraph shall be made by check payable to California Coastkeeper Alliance, Attn: Sean Bothwell, and delivered by overnight carrier to California Coastkeeper Alliance, 1100 11th Street, 3rd Floor, Sacramento California 95814.  Defendants shall provide LA Waterkeeper with a copy of each such payment.

35.      Interest on Late Payments: Defendants shall pay interest on any payments, fees, or costs owed pursuant to this Consent Decree that are not received by the due date. The interest shall accrue starting the fifth business day after the payment is due and shall be computed at a rate equal to the higher of: (i) 10% per year (0.833% per month); or (ii) the maximum rate permitted by applicable law. Interest shall continue to accrue daily on any outstanding balance until Defendants is current on all payments then due under this Consent Decree. Interest on late payments shall be made by check payable to California Coastkeeper Alliance, Attn: Sean Bothwell, and delivered by overnight carrier to California Coastkeeper Alliance, 1100 11th Street, 3rd Floor, Sacramento California 95814.

36.      Acceleration: In the event that (i) the Facility or Defendants' business in or operations thereof, or any part thereof or interest therein, are voluntarily or involuntarily sold or transferred, including without limitation pursuant to any judgment or decree of any court, without the prior written consent of Plaintiff, or (ii) the Facility or Defendants' business in or operations thereof otherwise seeks to cease operations, all portions of any payments, fees, or costs owed pursuant to this Consent Decree which are not yet due, including any outstanding remediation payments required pursuant to paragraph 32 or outstanding interest payments required pursuant to paragraph 35, shall immediately, without notice or demand, become due and payable, and the entire sum due and payable shall immediately begin to accrue interest pursuant to Paragraph 35 above. In such an event, Plaintiff may pursue all available legal remedies in connection with such accelerated amounts and interest

accrued thereon, as well as any due but unpaid portions of any payments, fees, or costs owed pursuant to this Consent Decree and any interest accrued thereon.

37.     Payments for Missed Deadlines: Defendants shall make a remediation payment of Five Hundred Dollars ($500.00) for each missed deadline included in this Consent Decree, except for deadlines for payments established in paragraphs 31 through 36, that is not excused by LA Waterkeeper in writing to an extension of that particular deadline. LA Waterkeeper shall not unreasonably withhold providing Defendants with an extension of a deadline that is reasonably requested by Defendants. Payments for missed deadlines shall be made to "Los Angeles Waterkeeper" and delivered by overnight carrier to Los Angeles Waterkeeper, Attn: Benjamin Harris, 360 E. 2nd St., Suite 250, Los Angeles, CA 90012. Defendants agree to make the stipulated payment within thirty (30) days of a missed deadline.

IV. **DISPUTE RESOLUTION**

38.     This Court shall retain jurisdiction over this matter for the term of this Consent Decree for the purposes of enforcing its terms and conditions, and adjudicating all disputes among the Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

39.     Meet and Confer. Either party to this Consent Decree may invoke the dispute resolution procedures of this Section IV by notifying the other party in writing of the matter(s) in dispute and of the disputing party's proposal for resolution. The Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days of the date of the notice in an attempt to fully resolve the dispute no later than thirty (30) calendar days from the date of the notice.

40.     Settlement Conference. If the Parties cannot resolve the dispute within thirty (30) days of the meet and confer described in paragraph 39, the Parties agree to request a settlement meeting or conference before the Magistrate Judge assigned to this action.

41.     <u>Motion</u>. In the event that the Parties cannot resolve the dispute within sixty (60) days of the initial settlement meeting or conference with the Magistrate Judge, the Parties agree that the dispute may be submitted for formal resolution by filing a motion before the United States District Court for the Central District of California. The Parties agree to request an expedited hearing schedule on the motion.

42.     In resolving any dispute arising from this Consent Decree before the Court, the Parties shall be entitled to seek fees and costs incurred pursuant to the provisions set forth in Section 505(d) of the Clean Water Act, <u>33 U.S.C. § 1365(d)</u>, and applicable case law interpreting such provisions.

## V. **MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE**

43.     <u>Plaintiff's Waiver and Release of Defendants</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Plaintiff, on its own behalf and on behalf of its officers and directors, release Defendants, its officers, directors, managers, employees, members, parents, subsidiaries, divisions, affiliates, successors or assigns, agents, attorneys and other representatives, from and waives all claims that were or could have been raised based on the facts alleged in the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

44.     <u>Defendants' Waiver and Release of Plaintiff</u>. In consideration of the above, upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their officers, directors, employees, parents, subsidiaries, affiliates and each of their successors or assigns, release Plaintiff, its officers and directors, from and waives all claims related to the 60-Day Notice and/or the Complaint up to and including the Termination Date of this Consent Decree.

45.     Nothing in this Consent Decree limits or otherwise affects Plaintiff's rights to address or take any position that it deems necessary or appropriate in an informal or formal proceeding before the State Board, Regional Board, EPA, or any other judicial or administrative body on any matter relating to Defendants'

compliance at the Facility with the Industrial General Permit or the Clean Water Act occurring or arising after the Effective Date.

## VI. **MISCELLANEOUS PROVISIONS**

46.    <u>No Admission of Liability</u>. The Parties enter into this Consent Decree for the purpose of avoiding prolonged and costly litigation. Neither the Consent Decree, the implementation of BMPs nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, or acknowledgement of any fact, law or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Defendants maintains and reserves all defenses they may have to any alleged violations that may be raised in the future.

47.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document.  Scanned, telecopy and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

48.    <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify that s/he is fully authorized by the party whom s/he represents to enter into this Consent Decree. A Party's signature to this Consent Decree transmitted by facsimile or electronic mail shall be deemed binding.

49.    <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Industrial General Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

50.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

51.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement

between the Parties and expressly supersedes any and all prior oral or written agreements, covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

52.     Severability. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

53.     Choice of Law. This Consent Decree shall be governed by Federal Law, and where applicable, the laws of the State of California.

54.     Diligence: Defendants shall diligently file and pursue all required permit applications for structural BMPs, as applicable, and shall diligently procure contractors, labor, and materials needed to complete all BMPs by the required deadlines.

55.     Effect of Consent Decree: Compliance with this Consent Decree does not mean that Defendants is complying with the Industrial General Permit, the Clean Water Act, or any other law, rule, or regulation.

56.     Negotiated Settlement. The Settling Parties have negotiated this Consent Decree, and agree that it shall not be construed against the party preparing it, but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and ambiguity shall not be interpreted against any one party.

57.     Modification of the Consent Decree. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Parties. Any request to modify any provision of the Consent Decree, including but not limited to any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

58.     Assignment. Subject only to the express restrictions contained in this Consent Decree, all of the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Parties, and their

successors and assigns. Defendants shall notify Plaintiff within ten (10) days of any assignment.

59. <u>Force Majeure</u>. Neither of the Parties shall be considered to be in default in the performance of any of their respective obligations under this Consent Decree when performance becomes impossible due to a Force Majeure event. A Force Majeure event is any circumstance beyond a Settling Party's control, including without limitation, any act of God, war, fire, earthquake, flood, windstorm, or natural catastrophe; criminal acts; civil disturbance, vandalism, sabotage, or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure event shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Parties shall exercise due diligence to resolve and remove any Force Majeure event.

60. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be, the extent feasible, sent via electronic mail transmission to the e-mail address listed below, or if electronic mail is not feasible, then by certified U.S. mail with return receipt, or by hand delivery to the following addresses:

//
//
//
//
//
//

<u>If to Plaintiff</u>:

Los Angeles Waterkeeper
Benjamin Harris, Staff Attorney
Barak Kamelgard, Staff Attorney
360 E. 2nd St., Suite 250
Los Angeles, CA 90012
ben@lawaterkeeper.org
barak@lawaterkeeper.org

<u>With copies to</u>:

California Coastkeeper Alliance
Drevet Hunt, Legal Director
1100 11th Street, 3rd Floor
Sacramento, CA 95814
dhunt@cacoastkeeper.org

<u>If to Defendant</u>:

Prime Plating
P.O. Box 1843
Sun Valley, CA 91352
quality@prime-plating.com

<u>With copies to</u>:

Stephen T. Holzer, Esq.
16633 Ventura Boulevard, 11th Floor
Encino, California  91436 – 1865
SHolzer@lewitthackman.com

Notifications of communications shall be deemed submitted three (3) days after the date that they are postmarked and sent by first-class mail, or immediately after acknowledgement of receipt via email by the receiving party. Any change of address or addresses shall be communicated in the manner described above for giving notices.

61.     If for any reason the U.S. Department of Justice ("DOJ") or the District Court should decline to approve this Consent Decree in the form presented, the Parties shall use their best efforts to work together to modify the Consent Decree within thirty (30) days so that it is acceptable to the DOJ or the District Court. If the Parties are unable to modify this Consent Decree in a mutually acceptable manner that is also acceptable to the District Court, this Consent Decree shall immediately be null and void as well as inadmissible as a settlement communication under Federal Rule of Evidence 408 and <u>California Evidence Code section 1152</u>.

62.     In the event that Defendants submit, and the Regional Board approves, a NOT (other than an NOT related to a change of ownership of the Facility), Defendants may apply to the Court to dissolve this Consent Decree, provided that

1    Defendants have satisfied all monetary obligations of this Consent Decree including

2    any and all payments owed pursuant to paragraph 36[acceleration]. Defendants shall

3    notify Plaintiff of its intent to submit an NOT with the Regional Board at least thirty

4    (30) days prior to submission. The failure to provide Plaintiff with the notice required

5    by this paragraph precludes Defendants from seeking to dissolve the Consent Decree

6    pursuant to this paragraph.

7        The Parties hereto enter into this Consent Decree and submit it to the Court for

8    its approval and entry as a final judgment.

9

10       IN WITNESS WHEREOF, the undersigned have executed this Consent Decree

11   as of the date first set forth below.

12

13   APPROVED AS TO CONTENT

14

15

16

17   Dated: _____October 13_, 2022          By: _____
                                                  Los Angeles Waterkeeper
18                                                Bruce Reznik, Executive Director

19

20   Dated: _____, 2022           By: _____
                                                  Prime Plating Aerospace, Inc.
21                                                Fred Schmidt, President

22

23   Dated: _____, 2022           By: _____
                                                  Schmidt Industries, Inc.
24                                                Fred Schmidt, President

25

26   //

27   //
     //
28   //

1  Defendants have satisfied all monetary obligations of this Consent Decree including
2  any and all payments owed pursuant to paragraph 36[acceleration]. Defendants shall
3  notify Plaintiff of its intent to submit an NOT with the Regional Board at least thirty
4  (30) days prior to submission. The failure to provide Plaintiff with the notice required
5  by this paragraph precludes Defendants from seeking to dissolve the Consent Decree
6  pursuant to this paragraph.

7       The Parties hereto enter into this Consent Decree and submit it to the Court for
8  its approval and entry as a final judgment.

10      IN WITNESS WHEREOF, the undersigned have executed this Consent Decree
11 as of the date first set forth below.

13 APPROVED AS TO CONTENT

16 Dated: _____, 2022      By: _____
17                                        Los Angeles Waterkeeper
                                          Bruce Reznik, Executive Director

19 Dated: __10/14____, 2022      By: _____
20                                        Prime Plating Aerospace, Inc.
21                                        Fred Schmidt, President

22
23 Dated: __10/14____, 2022      By: _____
24                                        Schmidt Industries, Inc.
                                          Fred Schmidt, President

26 //
27 //
   //
28 //

APPROVED AS TO FORM

CALIFORNIA COASTKEEPER

Dated: _____, 2022

By: _____
    Drevet Hunt
    Attorney for Plaintiff
    Los Angeles Waterkeeper

LEWITT HACKMAN

Dated: October 14, 2022

By: _____
    Stephen T. Holzer, Esq.
    16633 Ventura Boulevard
    11th Floor
    Encino, California
    91436 – 1865
    SHolzer@lewitthackman.com

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated:_____

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

_____
Honorable Fernando M. Olguin
United States District Court Judge

APPROVED AS TO FORM

CALIFORNIA COASTKEEPER

Dated:_____October 13, 2022          By: _____

Drevet Hunt
Attorney for Plaintiff
Los Angeles Waterkeeper

LEWITT HACKMAN

Dated: _____, 2022          By: _____

Stephen T. Holzer, Esq.
16633 Ventura Boulevard
11th Floor
Encino, California
91436 – 1865
SHolzer@lewitthackman.com

**IT IS SO ORDERED.**
**FINAL JUDGMENT**

     Upon approval and entry of this Consent Decree by the Court, this Consent
Decree shall constitute a final judgment between the Plaintiff and Defendant.

Dated:___December 22, 2022___          UNITED STATES DISTRICT COURT
                                       CENTRAL DISTRICT OF CALIFORNIA

Honorable Fernando M. Olguin
United States District Court Judge

26
[CONSENT DECREE]

Exhibit A

to

Consent Decree

Case No. Case No.: 2:21-cv-08283-FMO-E

**Legend and Notes:**

| | | | |
|---|---|---|---|
| Site Boundary | Downspout Sample Location | Industrial Containment Storage 6,000-Gal Tanks (Area 2 and 4) | |
| Covered Area - Non Industrial | Drainage Area 1 | Contingent Containment Storage 6,000-Gal Tanks (Area 1 and 3) | |
| Chamical Storage Within Containment | Drainage Area 2 | Conveyance Pipng | |
| Hazardous Waste Storage | Drainage Area 3 | | |
| Wastewater Storage (POTW) | Drainage Area 4 | | |
| Material Storage | Stormwater Flow | | |
| POTW Sample Point | Cinderblock Containment Berm | | |
| Stormwater Sample Location | Drive-over Berm | | |

N

20' 0' 20' 40'
Approximate Scale

| Title: SWPPP Facility Map<br>Prime Plating Aerospace, LLC | | | |
|---|---|---|---|
| Figure: 1 | Prepared By: AS | Date: May 2022 | Project Number: SM21-333581 |
| Address: 11321 Goss Street<br>Sun Valley, California 91352 | | | |

**PARTNER**
Engineering and Science, Inc.

